UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FRANK HOMOLA,

       Plaintiff,

                06-CV-719-JTC

   -vs-

PRAXAIR, INC.,

       Defendants.

---

APPEARANCES: CANTOR, LUKASIK, DOLCE & PANEPINTO, P.C. (Marc C. Panepinto, Esq., of Counsel), Buffalo, New York, for Plaintiff.

         SCHRODER, JOSEPH & ASSOCIATES, LLP (Alicia C. Rood, Esq., of Counsel), Buffalo, New York for Defendant.

## BACKGROUND

This case was originally filed in New York State Supreme Court, Erie County, on August 2, 2006. It was removed to this court on October 20, 2006 (Item 1). In the complaint, plaintiff alleges that defendant is the owner of property located at 101-103 East Park Drive in Tonawanda, New York. On November 30, 2005, while employed by the Shaw Group and working on defendant's property, plaintiff "was caused to slip and trip and fall to the ground based upon hazardous and snowy icy conditions and debris, resulting in his sustaining a serious injury . . ." (Item 1, Exh. A). Plaintiff alleges that his accident was a result of the violation of New York Labor Law §§ 200 and 241(6) and various sections of the New York State Industrial Code. *Id.* Defendant filed an answer to the complaint on September 11, 2006, and then served a notice to admit. Plaintiff, in his response to the

notice to admit dated October 2, 2006, stated that his damages exceeded $75,000 (Item 1, Exh. B).

On March 23, 2009, defendant filed a motion for summary judgment (Item 18). Plaintiff filed his response to the motion on April 9, 2009 (Item 21)[1], and defendant filed a reply on May 20, 2009 (Item 24). The court determined that oral argument was not necessary. For the reasons that follow, the defendant's motion for summary judgment is granted, and the complaint is dismissed.

**FACTS**

Defendant is the title holder to certain property in Tonawanda, New York, known as the Linde site. A portion of the property was used by the United States government to produce materials for the Manhattan Project. Pursuant to the Formerly Utilized Sites Remedial Action Program ("FUSRAP"), defendant entered into an access agreement with the United States Army Corps of Engineers to remove low-level, radioactive-contaminated soil from an area of approximately 28 acres on the Linde site (Item 18, Att. 3, Exh. C) The Army Corps of Engineers then contracted with Shaw Environmental and Infrastructure ("Shaw") to perform remediation at the Linde site. *Id.,* Exh. A, p.10.

In November 2005, plaintiff was employed by Shaw as a general laborer. He alleges that he was injured at an excavation site known as the "M Dig" (Item 18, Att. 3, Exh. E, p. 26). This area was surrounded by an orange safety fence held in place by stanchions and sand bags. *Id.,* p. 28. The area inside the fence was known as the controlled

---

[1] The court notes that plaintiff filed a Memorandum of Law in excess of the twenty-five page limit established by the Local Rules.

2

radiological zone ("CRZ").  Access to the CRZ was controlled; employees were required to wear protective clothing, sign in and out, and be monitored for radiation exposure.  *Id.,* pp. 28-29.  The area surrounding the dig was covered with compacted crushed stone.  *Id.,* p. 30.   Photographs of the site, taken in the days before and after plaintiff's injury, show an open area surrounding the excavation, with one side of a building within approximately ten feet of the M Dig. *Id.,* Exh. F.  Crushed compacted stone covered the area outside the excavation and the edge of the excavation inside and outside the fence (Item 18, Atts. 18, 19).

On November 30, 2005, plaintiff was assigned to assist in pumping contaminated rainwater from the M Dig.  A three-inch fire hose was run from the site under the fence, and water was pumped into a tank known as a "suck and blow."  Once the tank was full, the hose would be drained, either manually or by using the "blow" feature of the suck and blow (Item 18, Att. 3, Exh. E, pp. 38-39).  On that day, plaintiff reported to his union steward that at "approx 9:00 am in "M" Dig while lifting & walking out water line . . . I injured my back."  *Id.,* Exh. J.  On February 27, 2006, plaintiff signed a written accident report which again stated that he injured his back "while lifting & walking out [the] water line." *Id.,* Exh. K.  Plaintiff reported to his doctor on February 3, 2006 that "while pulling a water hose . . . [he] did feel a pull of his back." *Id.*, Exh. L.  On March 6, 2006, he reported to his physician that "while pulling water hose . . . [he] did feel his back pop."  *Id.*

On March 14, 2006, during an interview with a representative of Shaw's Workers Compensation carrier, plaintiff stated that he was injured when he lifted the hose over his head to drain the water from it (Item 18, Att. 3, Exh. M).  Plaintiff denied any knowledge of

3

defective equipment or safety issues. *Id.* In his Workers Compensation Claim for Compensation dated April 6, 2006, plaintiff stated that the injury occurred by "pulling-lifting 3 in. [inch] water lines to empty contaminated water back into the dig." *Id.,* Att. 4, Exh. N. On May 4, 2006, plaintiff told an investigator for Shaw's Workers Compensation carrier that he was injured while "lifting them [the hoses] . . . and I lifted my arms up and I just felt a pop and fell on my knees and I've had pain in my legs and back since." *Id.,* Exh. O.

During his deposition, plaintiff stated that he stepped on a portion of the fence that had curled out, his body twisted, and his feet went out from beneath him. He stated that the hose came down on his hardhat, bounced onto his neck and shoulder, and he dropped to his knees (Item 18, Att. 3, Exh. E, pp. 80-82, 202-03). On July 12, 2006, plaintiff filed a revised Claim for Compensation, in which he stated that he was injured when he "slipped and tripped on water and debris falling to ground with a hose landing on neck." *Id.,* Exh. Q.

## DISCUSSION

**1. Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 247 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant

4

is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255.

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991). Summary judgment cannot be entered "if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party." *Yurman Design, Inc. v. Golden Treasure Imps., Inc.*, 275 F. Supp. 2d 506, 508 (S.D.N.Y. 2003). The trial court's function at the summary judgment stage "is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Services, Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *see also Keystone Manufacturing Co. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 549 (W.D.N.Y. 2005).

**2. Labor Law § 200 Claim**

Defendant first argues that plaintiff's claim under New York Labor Law § 200 must be dismissed as defendant did not control the remediation work at the Linde site. Labor Law § 200 codifies the common law duty of an owner or employer to provide employees a safe work place. *See Comes v. New York State Elec. and Gas Corp.*, 631 N.E.2d 110, 111 (N.Y. 1993); *Russin v. Louis N. Picciano & Son,* 429 N.E.2d 805, 807 (N.Y. 1981). This provision applies to owners, contractors, or their agents, who "have the authority to control the activity bringing about the injury to enable it to avoid or correct an unsafe condition." *Russin*, 429 N.E.2d at 807; *see also Rizzuto v. L.A. Wenger Contr. Co.*, 693

5

N.E.2d 1068, 1072 (N.Y. 1998); *Lombardi v. Stout*, 604 N.E.2d 117, 119 (N.Y. 1992) (where the alleged defect or dangerous condition arises from the contractor's methods and the owner exercises no supervisory control over the operation, no liability attaches to the owner under the common law or under section 200 of the Labor Law). In this case, as defendant did not exercise control over the remediation work, plaintiff concedes that he does not have a viable Labor Law § 200 claim. *See* Item 22, Att. 2, p. 3.

### 3. Claim under Labor Law § 241(6)

Plaintiff's alternative claim is brought pursuant to Labor Law § 241(6). That section provides:

> All contractors and owners and their agents, . . . when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:
>
> . . . .
>
> 6. All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners, contractors and their agents for such work . . . shall comply therewith.

To establish a cause of action under Labor Law § 241(6), a plaintiff has the burden of proving that the defendants violated a rule or regulation of the New York State Commissioner of Labor, who has set forth specific standards of conduct in the New York Industrial Code. *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 618 N.E.2d 82, 86 (N.Y. 1993); *see also Owen v. Commercial Sites, Inc.*, 725 N.Y.S.2d 574, 575 (App. Div. 2001) (plaintiff must plead a violation of the Industrial Code). The duty under Labor Law § 241(6) to

6

comply with the Commissioner's regulations is nondelegable. *Long v. Forest-Fehlhaber*, 433 N.E.2d 115, 117 (N.Y. 1982); *Allen v. Cloutier Constr. Corp.*, 376 N.E.2d 1276, 1279 (N.Y. 1978). As a result, the plaintiff need not show that defendant exercised supervision or control over the worksite in order to establish his right of recovery. *Ross,* 618 N.E.2d at 86.

Defendant argues that plaintiff has not shown a violation of section 241(6) because plaintiff was not doing work covered by the statute. It argues that the statute applies to the construction or demolition of buildings, or excavation performed in connection with such construction or demolition. Additionally, even if excavation of the sort conducted at the Linde site was covered under the statute, defendant argues that plaintiff was not in the process of excavation work when the accident occurred. Defendant also contends that plaintiff has failed to establish a violation of any specific regulation under the Industrial Code and that it is not considered an "owner" for purposes of the statute.

The New York Court of Appeals has held that, despite the introductory language regarding the construction or demolition of "buildings," the scope of section 241(6) is not limited to building sites. *Mosher v. State,* 604 N.E.2d 115, 116-17 (N.Y. 1992) (injuries plaintiff sustained while employed on a State highway repaving project fall within the purview of Labor Law § 241(6)); *Ares v. State,* 605 N.E.2d 361 (N.Y. 1992) (section 241(6) applies to work in connection with highway construction project). The court noted that the introductory language was added in 1969 with the first five subdivisions of section 241. The statute originally consisted of subdivision 6 in substantially its present form; it applied by its terms to all "areas in which construction, excavation or demolition work is being

7

performed" and was not intended to be limited by the amendments. *Mosher,* 604 N.E.2d at 116. In an earlier case that presaged the reasoning in *Mosher*, the Appellate Division, Fourth Department, found that the defendant city could be liable under section 241(6) for the wrongful death of a worker buried in the collapse of an earthen trench, even though the work was not associated with building construction or demolition. *See Tilkins v. City of Niagara Falls*, 383 N.Y.S.2d 758, 762 (App. Div. 1976); *see also Celestine v. City of New York,* 446 N.Y.S.2d 131 (App. Div. 1982), *aff'd,* 453 N.E.2d 548 (N.Y.1983) (Labor Law § 241(6) not limited to building sites). Here, while plaintiff's employer was neither engaged in construction nor demolition of a building, it was conducting excavation operations at the Linde site as part of the remediation project. Moreover, although plaintiff was not literally engaged in "excavation" at the time of his injury, the removal of accumulated rainwater from the excavation site was part of the excavation and remediation process. Accordingly, the court finds that Labor Law § 241(6) applies to plaintiff's claim.

Plaintiff must next establish the violation of specific sections of the Industrial Code as codified in the New York Code, Rules and Regulations ("N.Y.C.R.R."). He has alleged that defendant violated sections of the Industrial Code regarding slipping and tripping hazards and storage of materials, specifically sections 23-1.7(d), 23-1.7(e)(1) and (2), and 23-2.1(a).

Title 12 N.Y.C.R.R. § 23-1.7(d) provides as follows:

Slipping hazards. Employers shall not suffer or permit any employee to use a floor, passageway, walkway, scaffold, platform or other elevated working surface which is in a slippery condition. Ice, snow, water, grease and any other foreign substance which may cause slippery footing shall be removed, sanded or covered to provide safe footing.

Defendant contends that plaintiff has not established a violation of this regulation, as the gravel surface outside the fence was not a walkway or passageway and, by his own testimony, plaintiff did not fall due to a slippery surface. New York courts have held that an area qualifies as a walkway or passageway under the regulation "as long as it is part of the workplace and manmade." *Collins v. Olin Corp.,* 2001 WL 1823581, *3 (W.D.N.Y. December 3, 2001); *see also Whalen v. City of New York,* 704 N.Y.S.2d 305, 308 (App. Div. 2000)( staircase where the accident occurred qualified because it was a "passageway to the work site"); *Rothschild v. Faber Homes, Inc.,* 668 N.Y.S.2d 793, 795 (App. Div. 1998) (steel decking of a porch outside a door qualified); *Cottone v. Dormitory Authority of State of New York*, 639 N.Y.S.2d 631, 632 (App. Div. 1996) (plywood boards placed over wet grass qualify). In contrast, "open and common areas" are outside the purview of the regulation. *Pless v. Cleveland Wrecking Co.,* 2006 WL 2690068, *7 (W.D.N.Y. September 18, 2006); *see also Roberts v. Worth Constr., Inc.,* 802 N.Y.S.2d 177 (App. Div. 2005) (regulation does not apply to temporary dirt roadway located in open area at ground level)*; O'Gara v. Humphries & Harding, Inc.*, 723 N.Y.S.2d 25 (App. Div. 2001) (muddy ground in an open area exposed to the elements not within regulation); *Lawyer v. Hoffman*, 711 N.Y.S.2d 618 (App. Div. 2000) (temporary gravel roadbed is not a passageway for purposes of regulation); *Scarupa v. Lockport Energy Assocs.*, 667 N.Y.S.2d 561 (App. Div. 1997) (regulation inapplicable where plaintiff fell in a common area or open yard in front of or between buildings and slipped on muddy ground); *McGrath v. Lake Tree Village Assoc.*, 629 N.Y.S.2d 358 (App. Div. 1995) (regulation does not apply to common areas and open yards).

Here, the area outside the M Dig was open and common. The photographs indicate that the entire area surrounding the excavation was covered in compacted crushed stone. The stone was used on both sides of the safety fence, and was used to cover the edge of the excavation. There are no specifically demarcated gravel pathways or other manmade walkways on the remediation site. Plaintiff argues that the area where plaintiff was injured was a passageway or walkway for purposes of the regulation because it was an area between the safety fence and the adjacent building through which workers necessarily had to pass to enter the building or get to the excavation site. However, in *Smith v. Hines GS Properties, Inc.,* 815 N.Y.S.2d 82 (App. Div. 2006), the court found that an open area between a building under construction and material storage trailers, which was routinely traversed by the workers as their "only access to equipment and materials," was not a passageway for purposes of section 23-1.7(e)(1). As in *Smith,* the fact that the workers at the M Dig had to travel over a certain area of an open and common worksite, in this case due to its proximity to the adjacent building, does not transform that open and common area into a "passageway" for purposes of the regulation. Accordingly, plaintiff has not presented sufficient evidence from which a jury could conclude that he was injured as a result of a slipping hazard on a "floor, passageway, walkway, scaffold, platform or other elevated working surface."

Title 12 N.Y.C.R.R. § 23-1.7 provides for "Protection from general hazards." Subsections (e)(1) and (2) concern "Tripping and other hazards":

> (1) Passageways. All passageways shall be kept free from accumulations of dirt and debris and from any other obstructions or conditions which could cause tripping. . . .

> (2) Working areas. The parts of floors, platforms and similar areas where persons work or pass shall be kept free from accumulations of dirt and debris and from scattered tools and materials and from sharp projections insofar as may be consistent with the work being performed.

As stated above, plaintiff was not injured in a passageway or walkway but in the open area along the safety fence outside the M Dig. Accordingly, subsection (1) does not apply to his claims. Although he was in a "working area," plaintiff has likewise not shown a violation of subsection (2). The regulation does not apply where "the object on which plaintiff tripped . . . was an integral part of the work he was performing." *Sharrow v. Dick Corp.,* 649 N.Y.S.2d 281, 283 (App. Div. 1996), *lv. to app. denied,* 678 N.E.2d 1354 (N.Y. 1997) (no violation where employee tripped over tubular extension of hoist used in construction project); *see also O'Sullivan v. IDI Const. Co.,* 855 N.E.2d 1159 (N.Y. 2006) (no violation of regulation as electrical conduit that plaintiff tripped over was "integral part of the construction"); *Alvia v. Teman Elec. Contracting, Inc.,* 731 N.Y.S.2d 462, 465 (App. Div. 2001), *lv. to app. dismissed,* 769 N.E.2d 354 (N.Y. 2002) (no violation where plaintiff tripped on plywood that had been removed from concrete castings); *Adams v. Glass Fab, Inc.*, 624 N.Y.S.2d 705, 708 (App. Div. 1995) (no violation where worker tripped on wire mesh in area where concrete was to be poured). Here, plaintiff testified at his deposition that he fell on the curled edge of the safety fence. The fence was "consistent with" the remediation work being performed, and provided a boundary between the CRZ and the remainder of the worksite. Under no reasonable view could the safety fence be considered the equivalent of dirt, debris, sharp projections, or "scattered tools or materials." Accordingly, plaintiff has failed to present sufficient evidence to establish a violation of these subsections of the Industrial Code.

Finally, Title 12 N.Y.C.R.R. § 23-2.1(a) provides for the "Storage of material or equipment." Subsections (1) and (2) provide

> (1) All building materials shall be stored in a safe and orderly manner. Material piles shall be stable under all conditions and so located that they do not obstruct any passageway, walkway, stairway or other thoroughfare.
>
> (2) Material and equipment shall not be stored upon any floor, platform or scaffold in such quantity or of such weight as to exceed the safe carrying capacity of such floor, platform or scaffold. Material and equipment shall not be placed or stored so close to any edge of a floor, platform or scaffold as to endanger any person beneath such edge.

In this case, the safety fence cannot be considered "building materials," nor was the fence being "stored" in an unsafe manner. It was an integral part of the worksite, used to demarcate the CRZ from the area outside the M Dig. In response to the motion, plaintiff filed an affidavit in which he contends that after he slipped or tripped on the protruding safety fence, he then tripped over extra rolled fencing and extra hoses (Item 22, Att. 3, ¶ 15), thus giving rise to his claim under this section.

A party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony. *Bickerstaff v. Vassar College,* 196 F.3d 435, 455 (2d Cir. 1999), *cert. denied,* 530 U.S. 1242 (2000); *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969); *Martin v. City of New York*, 627 F.Supp. 892, 896 (E.D.N.Y. 1985). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma*, 410 F.2d at 578. Thus, factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not "genuine" issues for trial. *Id.*

For the first time, in response to the motion for summary judgment, plaintiff alleges that materials were stored in an unsafe manner and contributed to his fall and subsequent injury. The court is not convinced that this information was not presented earlier because defense counsel failed to ask sufficient questions at plaintiff's deposition. On the contrary, defense counsel asked plaintiff specifically to "tell us exactly what happened on November 30th, 2005 which led to your injury" (Item 18, Att. 3, Exh. E, p. 202). Plaintiff never stated that he tripped or slipped on anything but the curled edge of the orange safety fence.[2] Plaintiff may not raise an issue of fact with a manufactured affidavit in response to a motion for summary judgment. The court will disregard the affidavit and, accordingly, find that plaintiff has failed to establish a violation of this regulation.

As the court has determined that plaintiff failed to establish a violation of any section of the New York Industrial Code, it is unnecessary to address defendant's argument that defendant is not an "owner" for purposes of section 241(6). Additionally, the court declines to address defendant's argument that plaintiff's claim is incredible as a matter of law.

## CONCLUSION

Defendant's motion for summary judgment is granted, and the complaint is dismissed. The Clerk is directed to enter judgment in favor of defendant.

So ordered.

    \s\ John T. Curtin___
    JOHN T. CURTIN
    United States District Judge

Dated: May 26 , 2010
p:opinions\06-719.april710

---

[2] The court also notes that plaintiff did not initially report a slip or trip. In the various reports to his union steward, doctors, and insurance investigators following his injury, plaintiff merely stated that he lifted the hose over his head and felt a "pop" in his back.

13